UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHARLES SHEPHERD, ) | CASE NO. 1:13 CV 1145 |
|       Plaintiff, ) | JUDGE CHRISTOPHER A. BOYKO |
|    v. ) | MEMORANDUM OF OPINION AND ORDER |
| GARY MOHR, et al., ) | |
|       Defendants. ) | |

CHRISTOPHER A. BOYKO, J.:

*Pro se* plaintiff Charles Shepherd filed the above-captioned *in forma pauperis* Complaint pursuant to 42 U.S.C. §1983 and the Americans with Disability Act (ADA), 42 U.S.C. §12132. Plaintiff names the following Defendants in their individual and official capacities: Gary Mohr, Director of the Ohio Department of Rehabilitation and Corrections (ODRC); Gary Croft, Chief Inspector of the ADA; Mona Parks, Assistant Chief Inspector; Darlene Krandall, Institutional Inspector; Ms. Wright-Hughes, Health Care Administrator; Dr. Houghlan, Chief Medical Officer; Mr. B. Reisdorff, ADA Coordinator; and, Bennie Kelly, Grafton Correctional Institution (GCI)Warden as party Defendants. Plaintiff, who is incarcerated at GCI, asserts the Defendants denied him adequate medical care and acted with deliberate indifference to his medical needs in violation of the Eighth Amendment of the Constitution and Title II of the ADA. In his prayer for relief, Plaintiff seeks a declaratory judgment ordering the Defendants to schedule surgery to repair his hernia, provide prescription medication for gastroesophageal reflux disease (G.E.R.D.) and pay damages in excess of one million dollars.

Background

On a December 13, 2012, Plaintiff met with Dr. Houghlan to discuss the results from an x-ray

image of his upper gastrointestinal tract. The physician advised Plaintiff that the x-ray revealed a small hiatal hernia,[1] as well as a "Schatzki's ring."[2] When Plaintiff asked for an explanation, Dr. Houghlan assured him he had "nothing to worry about" because 30% of the general population suffer from the same condition. Plaintiff then unsuccessfully attempted to supplement his medical file with a three-page diary he kept to recount his episodes of regurgitation after every meal-- three times a day--- between November 13, 2012 and December 4, 2012. The doctor declined to include the diary, but advised Plaintiff he would annotate his medical chart to include a history of vomiting. Plaintiff described the physician's tone as "nasty and disrespectful."

Plaintiff filed an Informal Complaint Resolution (ICR) at GCI on December 17, 2012, alleging he received inadequate medical care. He complained that no medical staff ever advised him of his food restrictions and requested an order directing someone to highlight what items he should purchase from the commissary to address his medical needs. Plaintiff also requested authorization for a fellow inmate to accompany him during his next scheduled medical appointment. The other inmate would transcribe information from Plaintiff's medical chart because, while "[i]t would take me 3-4 hours to try[,] . . . my friend can speed read and would only need 15 minutes . . . to accomplish this mission." (Doc. No. 1-1 at 16.) Finally, Plaintiff requested a description and clarification of the type of hernia the doctor diagnosed.

The ICR was denied. Staff responded that ODRC policy only permitted the release of a prisoner's medical records to that inmate or his court ordered legal representative. Also, staff flatly refuted Plaintiff's claims that no one discussed his commissary restrictions with him. Records revealed Plaintiff already had a dietary consultation on November 13, 2012 and discussed commissary restrictions with Dr. Houghlan on December 13, 2012. Also, Plaintiff was reminded

---

[1]A hiatal hernia is "a condition in which the upper part of the stomach bulges through an opening in the diaphragm. . . . Hiatal hernias are common, especially in people over age 50." . http://www.nlm.nih.gov/medlineplus/hiatalhernia.html

[2]A Schatzki Ring, or lower esophageal ring, "is an abnormal ring of tissue that forms where the esophagus (the tube from the mouth to the stomach) and stomach meet." http://www.nlm.nih.gov/medlineplus/ency/article/000208.htm

that his x-ray results indicated the caliber of his esophagus was normal, "normally distendable," and there was no impression of a mass or stricture present. And, it was explained that Plaintiff had a small "sliding type of hernia."

Continuing to exhaust his administrative remedies, Plaintiff filed a Notification of Grievance (NOG) with the Institutional Inspector on December 25, 2012. Explaining he is functionally illiterate, Plaintiff believed "common sense" dictated it was only logical that he be permitted the assistance of another inmate to read his medical records. Further, Plaintiff's medical research led him to believe his hernia was causing GERD.[3] He reiterated that he continued to vomit after every meal and requested an order directing the medical staff "to fix it," or explain how he could "fix" his condition.

On January 24, 2013, Plaintiff's grievance was granted, in part. Inspector Darlene Krandall drafted the response and explained that while the prison could not authorize another inmate to review his medical chart, Plaintiff was certainly permitted to view his own file and take notes. Moreover, GCI would release his medical file if it received a written request from Plaintiff's physician or outside counsel. She added that HCA Wright-Hughes would "schedule a time when the Inspector, HCA and you can sit down and have access to the file and answer any questions you may have" if that is what the Plaintiff desired. If he still had specific concerns regarding his medical condition, prison procedure required that he sign up for sick call. Finally, Ms. Krandall asked Plaintiff to confirm, by kite, if he wanted a meeting with her and the HCA to discuss his medical concerns.

Without addressing the Inspector's offer, Plaintiff appealed her decision to the Chief Inspector claiming his Eighth Amendment rights were still being violated. He reiterated that the prison was denying him the right to review his medical record. Moreover, he learned from medical literature provided by his daughter, that a "'NISSEN FUNDOPLICATION' will fix my hiatal hernia

---

[3]When someone has a "hiatal hernia, it's easier for the acid to come up. The leaking of acid from the stomach into the esophagus is called gastroesophageal reflux disease (GERD). GERD may cause symptoms such as • Heartburn • Problems swallowing • A dry cough • Bad breath." *National Institute of Health*, http://www.nlm.nih.gov/medlineplus/hiatalhernia.html

and cure all my ailments and/or symptoms of disease." (Doc. No. 1-4.) As such, he requested an order directing Dr. Houghlan to send him to C.M.C. for a surgery consult to determine if a physician can "fix my serious medical condition causing my G.E.R.D.?" *Id*.

On February 21, 2012, the Chief Inspector affirmed Inspector Krandall's decision. Based on her investigation of all the actions taken by GCI personnel to address Plaintiff's medical needs, Chief Inspector Mona Parks, R.N. determined there were several instances where Plaintiff's medical condition was actively addressed.[4] She further explained that:

> A barium swallow completed on 12-3-12 showed a small hiatus hernia with Schatzki's ring (a narrowing of the esophagus), but has normal esophageal motility. This issue will not cause vomiting 10 minutes after eating, but can at times cause solid food to "get stuck" in your throat when swallowing, so be sure to chew your food thoroughly. I am unsure where you measured for a hernia, because a hiatus hernia can only be measured when taking an x ray and not palpable or noticeable from outside observation.

(Doc. No. 1-5 at 2.) She added that the images of his esophagus "show[ed] nothing that his [sic] acutely abnormal indicating the need for outside consultation for surgical evaluation of the hiatus hernia." *Id.* Reviewing his commissary purchases over a 90-day period, Parks noted several of the following items the Plaintiff should eliminate from his diet in the future: "45 cans soft drinks; orange/cranberry juice; 2-4oz bags coffee; 19 pkgs mackerel in oil/smoked herring fillets/tuna steaks in Thai chili sauce; 6 pints ice cream; 36 pkgs chili/chicken Maruchan Ramen noodles; 7 pkgs various summer sausages; 12pkgs sour cream chips/nuts/cheese crackers; 41 pkgs cookie/pastry/candy items, all of which contain either chocolate, fat, peanut butter" *Id*. Parks added that Plaintiff should avoid lying down for 2-3 hours after eating and purchase an over-the-counter (OTC) antacid medication to decrease any discomfort. Reiterating the Inspector's earlier recommendation, Parks advised Plaintiff to kite the Inspector to review his file and discuss food purchases and dietary restrictions.

On January 10, 2013, Plaintiff submitted a second ICR alleging the denial of adequate

---

[4]For example, she noted: "an order for six small meals that was ordered 11-13-12 through 5-13-13." (Doc. No. 1-5 at 2.)

-4-

medical care and violations of the ADA.[5] The grievance repeated his complaints of nausea after eating, but also challenged Dr. Houghlan's refusal to write him a prescription to alleviate nausea, because the antacid Omeprazole was not effective. Again, he requested a surgical consultation for a Nissen fundoplication procedure. Staff denied the ICR, explaining it was ODRC's policy rely to rely on patient education as an initial treatment plan for his condition. Ms. Wright-Hughes suggested Plaintiff consume small meals and purchase Zantac or Prilosec as alternatives to Omeprazole for treatment of his GERD. Staff reminded Plaintiff that his x-ray indicated he had normal mobility of the esophagus.

Plaintiff appealed to the Institutional Inspector. The Inspector denied Plaintiff's grievance, explaining:

> We talked at length concerning your GERD symptoms and what you had tried from the commissary. Ms. Wright Hughes indicated that she would speak to the doctor, review your commissary purchases and see if you were eligible to receive additional medication through medical services. After our lengthy meeting you seemed to understand that you don't meet the requirements of having your hernia surgery at present. Ms. Wright Hughes explained to you under what conditions the surgery would be performed. You seemed satisfied with this response. Please remain in contact with medical services if your symptoms change or worsen. You seemed satisfied with the meeting you had with myself, Health Care Administrator Wright Hughes and Quality Coordinator L. Hanko.

(Doc. No. 1-7 at 6.) Dissatisfied with the response, Plaintiff appealed to the Chief Inspector. The Chief Inspector denied the appeal finding:

> [A]fter review of the above information, . . . the medical staff at your facility is giving you the proper care within the ODRC guidelines. I encourage you to maintain close contact with staff to ensure that your current medical concerns are being addressed. No further action will be taken in regard to this appeal at this time.

(Doc. No. 1-7 at 9.)

---

[5] In December 2012, Plaintiff also submitted an Inmate Reasonable Accommodation Request to the ADA Coordinator at GCI. He requested free prescription medication and surgery to repair his hernia. The request was denied because, unlike other prisoners who are provided free medication, Plaintiff was not considered indigent by GCI. Moreover, no medical recommendation supported a requirement for surgery to address his condition.

Plaintiff also filed an appeal to ODRC's Special Needs Assessment Committee, which responded to his ADA claim in a letter dated May 8, 2013 and signed by Gary Croft. Evaluating Plaintiff's request for free medication and surgical repair of his hernia, the committee found "that these issues are medical issues. The committee further finds that these medical issues have been addressed as you appropriately pursued these issues through the Inmate Grievance Procedure." (Doc. No. 1-8.)

After fully exhausting his administrative remedies, Plaintiff filed the above-captioned Complaint. He argues he has continuously been denied medical care for eight years, beginning at Trumbull Correctional Institution.[6] Now, at 75 years of age, Plaintiff states he suffers from "severe bowel problems" of which the Defendants are aware, but refuse to provide treatment in violation of his Eighth Amendment rights and the ADA.

## Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

## Civil Rights Violation

To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and law of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather, it is the means through which a plaintiff may seek redress

---

[6] Neither the Complaint nor any of Plaintiff's grievances include any issues from Trumbull Correctional.

-6-

for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). The statute applies only if there is a deprivation of a constitutional right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701(1976); *Baker*, 443 U.S. at 146-47. Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' " of the United States. *Baker*, 443 U.S. at 140.

Plaintiff argues, in part, that the Defendants denied him adequate medical care in violation of the Eighth Amendment of the Constitution. Every grievance he filed and complaint he levels repeats his request for a surgical procedure and permission to allow a fellow inmate to transcribe his medical records. Based on the denial of these requests, Plaintiff alleges the Defendants engaged in acts that allegedly caused him pain, suffering, and physical injury.

"To sustain a cause of action under [Section] 1983 for a failure to provide medical treatment, a plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir.2001) (quoting *Estelle v. Gamble*, 429 U.S. 97,104 (1976)). There are two critical components to this inquiry: one objective and one subjective. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Sixth Circuit has stated that the objective component of deliberate indifference in a medical-needs case is met where a plaintiff produces evidence of a "serious medical need." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896 (6th Cir.2004). The term "serious medical need" was further defined as either "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir.2008)(quoting *Blackmore*, 390 F.3d at 897). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded

-7-

that risk." *Id*. at 703.

Plaintiff alleges his hiatal hernia reflects a serious medical need that requires a specific surgical procedure the Defendants are denying. He does not, however, allege any physician issued an order that required this surgery as the sole course of treatment. Therefore, the Court must look to whether the Defendants 'should have' easily recognized the need for surgery.

The relevant facts in the Complaint repeatedly refute Plaintiff's assertion that a Nissen fundoplication procedure is the only adequate method to treat his hernia. He has been advised on numerous occasions that x-ray images of his esophagus do not suggest he is a viable candidate for surgery. Although the Defendants have advised Plaintiff to change his dietary selections, select alternative OTC medications and change his habits following a meal, Plaintiff neither alleges he has followed any of these recommendations, nor that they have consistently failed to alleviate his condition. Instead, he has repeatedly focused solely on surgery as his only option and refused to acknowledge the existence of an alternative treatment.

To satisfy the subjective component of an Eighth Amendment claim, a plaintiff must show that the defendant had "a sufficiently culpable state of mind." *Id*. (internal quotation marks omitted). This state of mind is shown "where 'the official knows of and disregards' " the substantial risk of serious harm facing the detainee. *Id*. (quoting *Farmer*, 511 U.S. at 837). To qualify, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not necessary to establish direct evidence of a defendant's knowledge, but rather, the knowledge aspect can be inferred from the obviousness of the harm stemming from the risk. *See Hope v. Pelzer,* 536 U.S. 730, 738 (2002). Here, the Plaintiff does not articulate any substantial risk of harm he will face if surgery is not immediately provided. As such, the Complaint fails to support an injury in fact that resulted from the Defendants' actions.

The extensive grievance history in this case reflects numerous overtures the Defendants have made to meet with the Plaintiff and discuss his health concerns regarding diet and

medications. The fact that he refuses to accept their course of treatment does not amount to a deprivation of medical attention. As a matter of law, prisoners are not entitled to unfettered access to the medical treatment of their choice. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-104). Therefore, Plaintiff's allegations are simply not sufficient to allow his claim to proceed as a constitutional violation for deliberate indifference to a severe medical condition.

## ADA Claim

Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 *et seq.*, which prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of that individual's disability, covers inmates in state prisons. *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 208 (1998). The statute provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). To state a *prima facie* case of discrimination under Title II, a plaintiff must prove that: (1) he has a disability; (2) he otherwise qualifies for the service, program, or activity; and (3) defendants intentionally discriminated against him solely because of his disability. *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir.2005); *Tucker v. Tennessee*, 539 F.3d 526, 535 (6th Cir.2008).

Even if Plaintiff established he had a disability, "a plaintiff proceeding under Title II of the ADA must ... prove that the exclusion from participation in the program was 'solely by reason of [disability]." ' *Sandison v. Michigan High Sch. Athletic Ass'n. Inc.*, 64 F.3d 1026, 1036 (6th Cir.1995). There is no evidence the Plaintiff was denied medical care, much less denied medical care because of his hiatal hernia. Moreover, he cannot contend the Defendants failed to provide an accommodation under Title II of the ADA. The ADA language requiring "reasonable accommodations" appears in Title I of the ADA, and applies only to employers. The language applicable to public services, benefits, and programs is found in the regulations implementing

Title II. These regulations require "reasonable modifications" to public services and programs that discriminate on the basis of disability unless such modifications would fundamentally alter the nature of the service or program. *See* 28 C.F.R. § 35.130(b)(7). Thus, here there is no requirement for any accommodation, and given the lack of evidence of discriminatory treatment, no requirement for any modification. Accordingly, Plaintiff has failed to state a claim for relief under Title II of the ADA or the Eighth Amendment.

## Conclusion

Based on the foregoing, Plaintiff's Complaint is dismissed pursuant to 28 U.S.C. §1915(e), but without prejudice to any state law claims he may seek to assert. Further, the Court certifies that an appeal from this decision could not be taken in good faith.[7]

IT IS SO ORDERED.

s/ Christopher A. Boyko

CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

DATED: January 15, 2014

---

[7] The statute provides in relevant part: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."28 U.S.C. § 1915(a)(3).